UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:                                    Case No. 95-48268

MTG, Inc.,                                           Chapter 7
                        Debtor
_____/                    Judge Thomas J. Tucker

GUY C. VINING, etc.,

                Plaintiff,

vs.                                                  Adv. Pro. No. 03-4950

COMERICA BANK, et al.,

                Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S CONTEMPT MOTION**
**(DOCKET # 505)**

## I. Introduction

This adversary proceeding is before the Court on the motion by the Plaintiff Trustee Guy

C. Vining ("Vining"), entitled "Motion for Order Finding Comerica Bank and Counsel in

Contempt of Court and Granting Monetary Sanctions and Other Relief Based on Violations of

Discovery Orders, Violations of Discovery Duties, and Discovery Fraud" (Docket # 505, the

"Contempt Motion"). The Contempt Motion seeks an order (1) finding Comerica Bank

("Comerica") and its counsel in contempt of various discovery orders for their failure to produce

documents related to, and necessary for the estate's prosecution of its lender liability claims

against Comerica; (2) awarding monetary sanctions against Comerica and its counsel for their

violation of their discovery duties and discovery orders and their spoliation of evidence; (3)

requiring Comerica to produce certain documents allegedly missing from Comerica's document production; and (4) permitting Vining to conduct further discovery.

The Court will deny the Contempt Motion in its entirety, primarily because Vining has failed to identify any documents that ever existed, but that were not produced in discovery, that would be *material* to the prosecution of any of Vining's claims, including any lender-liability-type claims against Comerica.

## II. Procedural history

The Contempt Motion was accompanied by a 102-page brief (the "Contempt Brief") and 47 exhibits (Docket ## 507, 510). The Taunt Defendants (Charles J. Taunt and Charles J. Taunt & Associates, P.C.) filed a one-sentence objection to the Contempt Motion (Docket # 516). Then Comerica filed a response opposing the Contempt Motion, consisting of a 65-page brief and 34 exhibits (Docket # 521). Then Comerica filed an Affidavit of Bruce Becker, in further response to the Contempt Motion (Docket # 525). Next, Vining filed a reply brief in support of the Contempt Motion, with 29 exhibits attached. The Court then held a lengthy hearing on the Contempt Motion. The Court allowed Vining and Comerica to file supplemental exhibits, which each party did (Docket ## 544, 545).

Later, after further considering the Contempt Motion, and after obtaining the views of the parties on the matter, the Court decided to allow the parties to file potentially dispositive motions. (The Court previously had prohibited the filing of such motions until after discovery closed.) The Court allowed the parties to file summary judgment motions without first ruling on the Contempt Motion. Having the parties present their summary judgment arguments on Vining's claims and on the Defendants' defenses has assisted the Court in determining what

2

documents in Vining's discovery requests were material to those claims and defenses. This, in turn, has proved to be important in deciding the Contempt Motion.

All of the parties filed motions for summary judgment. In the case of Vining, the motion was styled as a motion for default judgment, or in the alternative, for summary judgment. The motions were extensively briefed, and the Court held a lengthy hearing on the motions. Today the Court has filed a lengthy opinion and will file an accompanying order, ruling on the summary judgment motions. Today the Court also is filing an opinion and order regarding certain discovery issues. The Court refers the reader to its two other opinions for a detailed description of the facts and the claims in this case.

## III. The parties' positions regarding the Contempt Motion

### A. Vining's position

In support of the Contempt Motion, Vining alleges that "[i]n 1996, Defendants conspired to prevent the estate's prosecution of claims against Comerica," and that "Comerica and its counsel have pursued that same conspiratorial objective by engaging in a comprehensive pattern of discovery obstruction, violations of discovery duties and orders, and blatant fraud" with the "single-minded purpose: to conceal the vast majority of evidence supporting the Trustee's claims and rebutting Comerica's fictional defenses."[1] Vining alleges that in furtherance of such conspiracy, "Comerica has intentionally concealed the vast majority of its records relevant to [Vining's] claims and Comerica's defenses[;]"[2] that "Comerica and [its] counsel intentionally and repeatedly violated their discovery duties and otherwise committed discovery fraud on

---

[1] Contempt Br. (Docket # 507) at 1 (footnote omitted); *see also id.* at 94 (footnote omitted).

[2] *Id.* at 29 (capitalization omitted); *see also id.* at 46.

3

[Vining] and the Court[;]"[3] and that Comerica and its counsel "acted willfully, in bad faith, and with fault" in failing to comply with their discovery obligations and various discovery orders.[4] Vining alleges that Comerica failed to comply with the requirements of the following discovery orders of this Court: the "Adversary Proceeding Scheduling Order" (the "Amended Scheduling Order");[5] the "*Second* Order Granting, in Part, Plaintiff's Motions To Compel Discovery (Docket ## 322, 324) And Scheduling a Further Hearing on the Motions" (the "Second Discovery Order");[6] and the "*Eighth* Order Regarding Plaintiff's Motions to Compel Discovery" (the "Eighth Discovery Order").[7] Vining alleges that Comerica and its counsel also violated other discovery orders on additional matters.[8]

Through his attorney, Todd Halbert, Vining also alleges that Comerica "fabricated" evidence that would support its version of events.[9]  For example, Vining alleges that Comerica created a false a memo dated August 16, 1995 from Michael Collins to Michael Main, counsel for Comerica (the "Collins-Main Memo").[10]

---

[3]  *Id.* at 86.

[4]  *Id.* at 88 (capitalization omitted).

[5]  Docket # 71.

[6]  Docket # 365 (italics in original).

[7]  Docket # 480 (italics in original).

[8]  Contempt Br. (Docket # 507) at 57-58.

[9]  *See, e.g., id.* at 13, 41-42 (underlining omitted) (alleging that Comerica fabricated reports and "business records" in 2009 "to pass off as business records for purposes of this litigation").

[10]  At the hearing on the Contempt Motion, Halbert stated:

I believe the 8-1[6]-95 Collins[-]Main [M]emo was fabricated to come

4

Vining alleges that he "has been severely prejudiced by Comerica's discovery abuses" because "[t]he concealed records are unquestionably relevant to [Vining's] prepetition and postpetition claims against Comerica and other Defendants."[11]  Vining argues that

> [g]iven the facts of this case, this Court must presume not only that concealed documents were relevant, but also that [Vining] has been prejudiced by such concealment. "Relevance and prejudice may be presumed when the spoliating party acted in bad faith or in a grossly negligent manner." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010).[12]

Vining argues generally that he has been prejudiced with regard to both his pre-petition and post-petition claims because "[t]he concealed records cover the entire subject matter and time-frame of each of these claims" and "the concealed documents are the vast majority of Comerica records relating to these claims, not merely a few missing documents or even categories of documents relevant to isolated issues."[13]

---

up with this fictional version of events. I think I indicated in pleadings that it was produced in January '96. I've got to tell the Court having thought about it since, I am not certain that was the case. In fact I doubt that was the case. I think it's more likely that this was produced to Mr. Taunt and Mr. Ball for purposes of reviewing the lender liability claims.

It is a complete and utter fabrication. There is no way that the things that happened as stated in that memo, the Comerica cover story are true. And again Mr. Collins falsely testified in three different depositions to the facts of that memo.

Tr. of hearing on Contempt Mot. (Docket # 541) at 39.

[11]  Contempt Br. (Docket # 507)  at 89.

[12]  *Id.* at 91.

[13]  *Id.* at 90.

Vining argues that the allegedly missing documents are relevant to his pre-petition claims because they relate to Comerica's loan advances on MTG's line of credit and on its Letter of Credit for the FPT machine, "made after Comerica's June 21, 1995 meeting with [the] Becker Group and Debtor."[14] Vining argues that the allegedly missing documents would support his contention that "post-6/21/95 loans were made pursuant to Comerica-Becker agreements and are not obligations, demand or otherwise, enforceable against the Debtor."[15] Vining argues that this is supported by a handwritten memo by Comerica credit manager Tom Williams, who was responsible for the MTG loan, and forwarded to Steven Lyons of Comerica's Special Assets Group ("SAG") after the SAG took over MTG's account (the "Williams Memo").[16] The Williams Memo states:

> Steve, Eric R
>
> These came to me for processing/minuting at about the same time we learned that **the Becker deal had fallen apart**.
>
> I don't know if we want to do these now. If so, they should have your support as "6"s.
>
> Thanks,
>
> Tom Williams[17]

---

[14] *Id.* at 91 (footnote omitted).

[15] *Id.* at 90.

[16] *See, e.g.*, Tr. of hearing on Contempt Mot. (Docket # 541) at 39 ("Now I believe [the Williams Memo] relates probably to the series of recaps and credit approval records that are missing as it relates to all these Becker [L]oans.").

[17] Contempt Br. (Docket # 507) at 36 (bold added) (quoting the Williams Memo (Ex V to Contempt Br. (Docket # 507-31)) at pdf. p. 1 (line through "Steve" in the Williams Memo omitted)).

There were handwritten notations on the bottom of the Williams Memo that read in part:

> Dave Cr [rest of last name illegible] 773 0701
>
> Approval of a overform amount of _____.
>
> Enter into a Forbearance Agreement through 8/11/95[18]

Vining argues that "[t]he Becker deal that 'had fallen apart,' as Williams referenced, was the deal between [the] Becker Group and Comerica."[19]

Not only does Vining argue that the allegedly missing documents are relevant to his pre-petition claims against Comerica, but also he argues that not having the allegedly missing documents has prevented him from prosecuting his post-petition claims against Comerica. But Vining does not state how or why the allegedly missing documents would support any of his post-petition claims against Comerica.

Vining argues that "[t]he concealed records are also unquestionably relevant to Comerica's defenses" for the following reasons:

> Comerica has repeatedly and vigorously asserted that (1) the statute of frauds bars the Trustee's claims, (2) loans were to the Debtor, not [the] Becker Group, and are demand obligations which carry no duty of good faith, and (3) Comerica did not conspire with Taunt and his counsel to commit any of the offenses identified in the Complaint.
>
> Obviously, the concealed Comerica records include documents which defeat and give lie to each of these defenses. If they did not, why conceal them (or destroy them in direct violation of document retention policies) in the first place? Comerica may not be permitted to bootstrap a statute of fraud[s] and demand note

---

[18] *Id.*

[19] *Id.*

> defense by concealing the very documents which would prove such defenses false.[20]

Vining does not state how the allegedly missing documents would disprove any of Comerica's defenses. Rather, Vining appears to argue that this Court must presume this, based only on his *allegations* that there are missing relevant documents.[21]

Vining argues that based on the alleged discovery abuses, "the Court should grant monetary sanctions and other relief against Comerica and [its] counsel, under Fed. R. Civ. P. 26[(g)](3) and 37, its inherent power, and 28 U.S.C. § 1927 for their massive discovery violations and discovery fraud."[22] Although the Contempt Motion seeks to find only Comerica and its counsel in contempt, the Contempt Brief seeks an order finding Defendant Stephen Lyons in contempt as well; granting Vining sanctions against Stephen Lyons; and ordering Stephen Lyons to produce additional documents.[23]

### B. The Taunt Defendants' position

The Taunt Defendants filed an objection to the Contempt Motion.[24] They did not file a brief in support of the objection.

### C. Comerica's position

---

[20] *Id.*

[21] *See id*.

[22] *Id.* at 74 (capitalization omitted), 94-95.

[23] *Id.* at 95 ¶¶ VIII.(A)(1)-(A)(2), (D)-(F), (H), (K).

[24] Docket # 516.

Comerica vigorously disputes Vining's allegations, and opposes the Contempt Motion on numerous grounds.

1. **Comerica's argument that neither Comerica nor its counsel have concealed, falsified, or fabricated records; or failed to comply with discovery requests; or committed discovery fraud**

Comerica argues that the Contempt Motion is "malicious" and that the allegations in it "are speculative, superficial, [and] without support or merit[,]" as is demonstrated by the "remarkable" lack of citation to the record for its purported "facts."[25] Comerica argues further that the Contempt Motion "is supported primarily by statements and accusations that are untrue, the stacking of inferences and supposition, and a healthy dose of what the trustee 'believes.'"[26] Comerica notes that "[t]he word 'believes,' in the context of 'the trustee believes that…' appears 18 times in the [Contempt Motion,]"[27] and that it is noteworthy that Halbert's co-counsel, E. Michael Morris, "did not sign the [Contempt Motion] nor does his name appear on it."[28] Comerica argues that the Contempt Motion was filed in bad faith, and that in the Contempt Motion, "Vining and Halbert resort to simply making things up."[29]

Comerica argues that "[n]either Comerica nor its counsel have 'concealed' records from [Vining] or committed 'discovery fraud.'"[30] Comerica argues "that most of the documents

---

[25] Comerica Bank's Resp. to Contempt Mot. (Docket # 521) at 1-2.

[26] *Id.* at 1 (footnote omitted).

[27] *Id.* at 2 n.2.

[28] *Id.* at 1 n.1.

[29] *Id.* at 1.

[30] *Id.*

9

claimed to have been 'concealed' either (a) never existed in the first place; (b) were never requested in discovery; (c) have been, in fact, produced; or (d) have no relevance to the claims and defenses in this case[.]"[31]

Comerica says that one "shining example" of such documents that Vining repeatedly alleged that Comerica and its counsel "'concealed'" or "'destroyed'" were documents relating to the alleged "loans that Comerica made to the Becker Group in mid-1995 for the operation of MTG by Becker" (referred to by Vining and Halbert as the "Becker Loans").[32] Regarding these purported Becker Loans, Comerica states:

> The "Becker Loans" never existed. Comerica never loaned money to the Becker Group relating to MTG. There is no evidence, not a shred of it, that Comerica ever made or attempted to make loans to [the] Becker [Group] relating to MTG, though there is evidence to the contrary. No witness with personal knowledge has testified that any such loans were ever made, and no document references them. And, obviously, if there were no Becker Loans, there could be no Becker loan documents. Even *Todd Halbert*, at his deposition, admitted that his allegations about the Becker Loans were not based on hard facts. Rather, he described his theory as a "legal argument" that loans made by Comerica to MTG could be "characterized" as advances benefit[t]ing Becker.

---

[31] *Id.* at iii; *see also id.* at 33-34 (listing documents that Vining and Halbert stated were missing but which were in fact produced by Comerica), 36 (listing documents that Vining and Halbert misrepresented were "'new'" documents that "Comerica had previously claimed did not exist" but which were in fact documents that Vining had never requested in discovery), 37 n.25 (stating that "[v]ery few" of the loan documents requested are relevant to Vining's claims); 41-42 (chart of allegedly missing documents showing that one of the documents Vining and Halbert allege is still missing has already been produced; that there is no evidence that the other documents exist; that even if the documents did exist most of them are not relevant to Vining's claims and Comerica's statute of frauds defense, that two possibly would be relevant, and that the Becker Loan Documents would be relevant if, in fact, any existed), 41-42 chart of allegedly missing RECAPS showing that one of the 7 was already produced; there is no evidence that 5 of them existed, and it is unclear if one of them ever existed), 43-45 (chart showing that the vast majority of documents allegedly missing were either not requested in discovery, were already produced, or did not exist).

[32] *Id.* at 1-2.

10

. . . .

> The major claim of the [Contempt Motion] is that Comerica is
> hiding loan documentation relating to the so-called "Becker
> Loans." [Vining] and his counsel claim that these are the "most
> important" documents "concealed" by Comerica. The accusation
> that Comerica has "concealed" Becker Loan documents is not just
> reckless and unsupported, it is malicious and has been made
> despite Halbert's actual knowledge of its falsity[.][33]

Comerica notes that "[Vining] and Halbert accuse Comerica of not only concealing

and/or destroying all evidence related to the purported Becker Loans, but also charge that

Comerica altered evidence that was produced to make it appear that advances allegedly made to

[the] Becker [Group] under the so-called Becker Loans were actually made to MTG."[34]  But,

Comerica responds,

> evidence in the record including testimony from Vercnocke,
> Vining, and even Todd Halbert, demonstrates that not only were
> there never any Becker Loans or Becker Loans documentation, but
> that Halbert himself [in deposition testimony] called the Becker
> Loans a "characterization" and "legal argument" rather than a real,
> live actual loan, supported by documentation, from Comerica to
> Becker.[35]

---

[33] *Id.* at 2, 10-11.

[34] *Id.* at 11.

[35] *Id.* at 12; *see also id.* at 2 (italics in original) ("*Even Todd Halbert*, at his deposition, admitted
that his allegations about the Becker Loans were not based on hard facts. Rather, he described his theory
as a 'legal argument' that loans made by Comerica *to MTG* could be 'characterized' as advances
benefiting Becker."); 15-16 (emphasis added) ("[Halbert's] deposition shows that Halbert **fully knows
and understands** that there were no 'Becker Loans.'  Rather, he admitted that calling Comerica's
advances to MTG 'Becker' [L]oans was a 'characterization' and 'legal argument,' rather than a hard
fact."); 25 ("Halbert admitted that the concept of the Becker Loans was a 'characterization' and 'legal
argument,' not a hard fact.")  Comerica notes that when Halbert was questioned at his deposition whether
what he said was true in a 1998 pleading, in which he represented to Judge Graves that Vercnocke
"would testify that Comerica continued to make overformula advances *to MTG* after representatives of
MTG, Becker, and Comerica met in June, 1995[,]" Halbert stated: "Whether one characterizes it as an
out-of-formula loan [to MTG] or an advance to Becker is a legal argument that could be made at the time

Comerica says that the Williams Memo, relied on by Vining and quoted above, does not show the existence of any Becker Loans, because it says nothing about any Becker Loans, and the contents of the Williams Memo does not support such an interpretation. Comerica notes, preliminarily, that "Halbert has taken liberties with the [Williams Memo]" by attaching a document to it that was not attached to it when Comerica produced it in discovery.[36] Rather than the document Halbert attached to the Williams Memo, Comerica says the most likely document attached to the William Memo was a Recap.[37] And Comerica reasons:

> [A] better reading [of the Williams Memo], especially in context, is that [the Williams Memo] was referring to [the] Becker[ Group]'s potential purchase of MTG, which, the record shows, "fell apart" in late July, 1995. Further, in the "memo," Williams tells Steve Lyons that, "[i]f [we want to do these], they should have your support as '6's.'" The "6" refers to MTG's risk rating, which was downgraded by the Bank (from 5 to 6) on July 31, 1995, following Becker's decision to pull out of the proposed purchase. Becker, which was a very strong company, would not have received a "6" risk rating, which is quite poor. From the context of the document (and the fact that there is no evidence that any "Becker Loans" ever existed), Williams must have been talking about an MTG RECAP.
>
> With that context, the document that "came to" Williams and was forwarded with his "memo" to Steve Lyons was most likely a July 31, 1995 draft RECAP, which would have come to Williams'

of any evidentiary hearing. *Id*. at 16-17 (underlining in original) (quoting deposition testimony of Halbert). Comerica also notes that when Halbert was asked in his deposition whether the Comerica loan advances were used in the operations of MTG, Halbert stated: **"I'm saying they were used in M.T.G.'s operations. The extent to which it's a legally binding obligation for M.T.G. to pay, that's a matter of law to be addressed by the attorneys."** (*Id.* at 17 ) (bold in original) (citing pages 197-199 and 211-212 of Halbert's deposition testimony).

[36] *Id.* at 21.

[37] "'RECAP' [or 'Recap'] is an acronym that Comerica uses for a 'Record Evidencing Committee Approval.' It is the document that is presented to Comerica's loan committees for approval of certain (but not all) credit decisions." *Id.* at 34 n.20.

attention around the time that the Becker-MTG deal fell apart. *Exhibit 20.* At that point in time, the MTG deal was transferring to Comerica's Special Assets Group, so Williams would have been forwarding the draft RECAP to Steve Lyons, a manager in that group, to see if he would approve the actions contemplated in the RECAP.[38]

In response to an accusation by Vining that the transaction history report produced by Comerica's commercial loan accounting system, called "AFS," was altered, falsified, or fabricated, Comerica states: "The transaction history is a true and accurate Comerica business record, kept by Comerica in the ordinary course of business. It has not been altered, falsified, or fabricated."[39] Nor, according to Comerica, is it even possible to alter, falsify, or fabricate an AFS report. Comerica cites the affidavit of Anne T. Murphy, "First Level Officer in the Production Support Services group" of Comerica, who swears as follows:

> 7. I understand that the trustee or his counsel has also accused the bank of fabricating, falsifying, or manipulating the data that appears on the AFS report. The only data that is input into the AFS system to generate this report is the obligor number and a command to run the report. The AFS system takes that information and generates a report.
>
> 8. I further understand that the trustee or his counsel have accused us of withholding data or only populating certain fields of the report. As I indicated above, this type of report is in a standard format and accurately displays the information stored in the AFS system for the categories listed in the report. **It is not possible within the system to manipulate the fields in the report, or limit its output.**"[40]

---

[38] *Id.* at 22.

[39] *Id.* at 18, 20.

[40] Decl. of Anne T. Murphy (Docket # 521-18) at ¶¶ 1, 7-8 (emphasis added).

13

In response to Vining's argument that Comerica's loans for the FPT machine were really loans to the Becker Group, Comerica says: "This claim makes no sense. MTG contracted to buy the machine in January, 1995, well before negotiations began with [the] Becker [Group]."[41] And Comerica points out that Bruce Becker testified that there were no loans by Comerica to the Becker Group for the FPT machine for line of credit advances taken by MTG.

Comerica states that it produced all four outstanding MTG promissory notes and three promissory notes of parties related to MTG.[42] Comerica also says that it has produced many superseded notes and notes signed by parties other than MTG, even though it was unclear how such notes had any relevance to the claims and defenses in this adversary proceeding.[43]

Although Comerica admits that "*both sides* are missing documents" related to this case, it says that none of the documents that it could *not* find are relevant/material to the issues in this case.[44] According to Comerica, the fact that documents are missing from its records is not the result of any intentional concealment or destruction of the documents on its part. Rather, Comerica says that missing documents "are the almost certain outcome" of a delay of almost 8 years after the commencement of the MTG bankruptcy case before Vining filed this adversary proceeding, and a delay of 7 years after Comerica had entered into a settlement with Taunt, Trustee in which all potential claims against it had been released, its secured claim had been

---

[41] Comerica Bank's Resp. to Contempt Mot. (Docket # 521) at 23 (underlining in original).

[42] *Id.* at 45-46; *see also* Tr. of continued hearing on Contempt Mot. (Docket # 546) at 14-16 (stating the Bates Numbers of all of the promissory notes, and the mortgage note that Comerica produced and/or are part of the records of which Vining has possession).

[43] *See* Tr. of continued hearing on Contempt Mot. (Docket # 546) at 15-16.

[44] Comerica Bank's Resp. to Contempt Mot. (Docket # 521) at 3, 54-55.

14

allowed, and Comerica reasonably believed there would be no litigation against it as a result of MTG's purported claims.[45]  Comerica also argues that it "had no motivation [in 1995], and certainly has no motivation now, to intentionally conceal . . . documents" because "MTG never had any viable prepetition claim against Comerica."[46]

Comerica says that some of the documents lost or destroyed *by MTG* were copies of financial records in a complete form, which were in the possession of MTG's accounting firm. According to Comerica, MTG's Vercnocke testified that the accounting firm destroyed those records.[47]  Other documents lost or destroyed by MTG, according to Comerica, were "purchasing and billing records, including purchase orders, invoices, and shipping documents," previous drafts of an affidavit by [John] Hertzberg; Vercnocke's projections concerning the operation of MTG without the mold shop; and "Mr. Gosnell's personal daytimers, from which Vercnocke prepared a chronology of events relating to claims against Comerica."[48]

### 2. Comerica's argument that Vining has recklessly and intentionally abused discovery procedures

Comerica argues that "[Vining's] claims of 'concealed' documents have been proven to be not simply overblown, but reckless and, in some cases, intentionally deceptive."[49]  Comerica

---

[45] *Id.* at 3, 30. Comerica notes: Comerica's claim was allowed by the Court on April 19, 1996. The automatic stay was lifted, in part, on April 30, 1996. The Court approved the trustee's settlement of potential lender liability claims on August 29, 1996. That settlement included a release in favor of Comerica. (*Id.* (citations omitted).)

[46] *Id.* at 3 (italics in original), *see also id.* at iii, 58.

[47] *Id.* at 37.

[48] *Id.* at 37-39.

[49] *Id.* at 60.

argues further that the Contempt Motion and other discovery motions by Vining "have been vexatious and designed to avoid bringing the case to the dispositive motion stage and to increase expense for the defendants."[50] Comerica states that as of the time they filed their Contempt Brief, "Comerica's professionals have spent over 550 hours on discovery and discovery related issues since [Vining's] June 1, 2009 motion to compel was filed, at a cost of more than $75,000."[51] Comerica argues that Vining has engaged in "scorched earth litigation tactics" with the intent and the result of delaying the Court in reaching the merits of this case, and has caused "waste, and needless expense."[52] Comerica alleges that "[i]t is no accident that the motion to compel was filed just before the dispositive motion deadline," that Vining "simply does not want to reach the merits of this case, and has repeatedly filed discovery motions (including this [Contempt Motion]) just before such deadlines."[53] Comerica argues further that Vining has engaged in a form of discovery abuse by asserting a spoliation claim. Comerica says: "As a federal court recognized, "'[i]t seems that the "new frontier" of litigation is the spoliation arena;

---

[50] *Id.* at 50.

[51] *Id.* at 3; *see also id.* at 35 ("Comerica's counsel and paralegals have spent in excess of 550 billable hours on discovery-related tasks in this case, including time spent preparing for and appearing for hearings, preparing supplemental discovery responses, compiling lists of counsel who have represented Comerica in bankruptcy proceedings, preparing, sending, and reviewing surveys of bank officers concerning surcharge agreements, contacting and interviewing outside counsel concerning whether they had ever drafted surcharge agreements on the bank's behalf, reviewing and obtaining documents, preparing briefs, responding to the trustee's discovery claims, and other discovery-related activity."), 59 ("Comerica has spent in excess of $75,000 since the trustee's motion to compel was filed in June, 2009, responding to the discovery motion and attempting to satisfy the trustee's never-ending requests.").

[52] *Id.* at 3-4.

[53] *Id.* at 35 n.22.

find some evidence in the case that is not preserved exactly, and try to win the case on that basis.'"[54]

Comerica argues that this is the litigation strategy that Vining has used. "Facing summary disposition on his lender liability claims because of the demand nature of MTG's obligations, [Vining] has attempted to both delay a hearing on the merits in this case, and obtain a discovery/spoliation ruling to 'win' his case."[55] Comerica argues that "'[w]hen civil discovery procedures are used with the specific and malicious intent to weaken the resolve of the other party, then one may rightfully claim that the procedures are being used "to accomplish some end which is without the regular purview of the process[,]"'" and a court can hold that litigant "liable for the tort of abuse of process for discovery abuses").[56]

### 3. Comerica's argument that Vining has not satisfied the legal standard to hold Comerica in contempt

According to Comerica, the Contempt Motion is an example of Vining's discovery abuse in this adversary proceeding. Comerica argues that the Contempt Motion is without merit because Vining has not satisfied the legal standard to hold it in contempt – "'[Vining] must prove **by clear and convincing evidence** that [Comerica] violated the [C]ourt's prior order'"[57] and that

---

[54] *Id.* at 51 (citing *Hickman v. Carnival Corp.*, No. 04-20044 CIV UUB, 2005 WL 3675961, *1 (S.D. Fla. July 11, 2005)).

[55] *Id.*

[56] *Id.* (citing *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 402 (Tenn. 2002)).

[57] *Id.* at 51 (quoting *Glover v. Johnson*, 934 F. 2d 703, 707 (6th Cir., 1991) (emphasis added) (citing *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th Cir., 1987)).

such order was "'clear and unambiguous."[58]  Comerica argues that, contrary to what Vining

alleges, it did not violate the Amended Scheduling Order, the Second Discovery Order, the

Eighth Discovery Order, or any other order of this Court.

Comerica disputes Vining's argument that Comerica violated the Amended Scheduling

Order by not making adequate Rule 26 initial disclosures.  Comerica says that it made adequate

disclosures, and that Vining "cites no case that holds that a party that makes an allegedly

inadequate initial disclosure violates a scheduling order."[59]  According to Comerica, inadequate

disclosure is not a basis for holding a party in contempt.

The Second Discovery Order required "Comerica to 'serve supplemental answers to

Plaintiff's Interrogatory Nos. 5, 7, 8, and 11,'and serve 'supplemental written response to

Plaintiff's Document Request Nos. 1, 3, and 4,' and 'make available to Plaintiff's counsel, for

inspection and copying, any and all documents covered by the foregoing supplemental

responses[.]'"  Comerica explains in its brief how it says it complied with each of these

requirements.[60]

The Eighth Discovery Order "required Comerica to respond to supplemental discovery

requests."  Comerica says that it did response to the supplemental discovery requests, and states

what steps it took to comply with these requests, and what supplemental discovery it provided.

Comerica notes that Vining "does not dispute that Comerica served answers to the supplemental

---

[58] *Id.* (quoting *Grace v. Center for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir., 1996)).

[59] *Id.* at 52,

[60] *Id.* at 52-54.

18

discovery requests."[61]  Rather, according to Comerica, Vining alleges that Comerica had lied when it previously "represented that it destroyed all of the business records relating to MTG," because Comerica later produced such records in response to their supplemental discovery requests.[62]  Comerica counters:

> Comerica has never indicated that it destroyed "all" of the business records related to MTG. That would be inconsistent with the thousands of pages of records Comerica has produced in this case in 1996, 1998, 2007, 2008, and 2010.  Comerica has acknowledged repeatedly that there are records that have been lost or destroyed, and its answers to the supplemental interrogatories were consistent with these statements.
>
> The claim that Comerica produced thousands of pages of "new" documents with its responses to the supplemental requests was proven wrong above. The vast majority of the "new" documents produced were Comerica policies and procedures that were never before requested in discovery. Of those responsive to previous requests, few had never been previously produced.[63]

### 4. Comerica's argument that Vining and Halbert have not satisfied the legal standard for spoliation

Comerica argues that Vining also fails to meet the legal standard for showing spoliation, as described by this Court in *Global Technovations, Inc. v. Onkyo U.S.A. Corp.* (*In re Global Technovations, Inc.*), 431 B.R. 739 (Bankr. E.D. Mich. 2010), *aff'd*, No. 10-12781, 2011 WL 1297356 (E.D. Mich. Mar. 31, 2011), *aff'd sub nom. Onkyo Europe Elec. GMBH v. Global*

---

[61] *Id.* at 54.

[62] *Id.*

[63] *Id.* at 54-55.

Technovations, Inc. (*In re Glob. Technovations Inc.*), 694 F.3d 705 (6th Cir. 2012).[64]  In *Global*

*Technovations,* the Court stated:

> A party seeking sanctions for the spoliation of evidence has the
> burden of proving
>
>> that the spoliating party (1) had control over the
>> evidence and an obligation to preserve it at the time
>> of destruction or loss; (2) acted with a culpable state
>> of mind [in] destroying or losing the evidence; and
>> that (3) the missing evidence is relevant to the
>> innocent party's claim or defense.

413 B.R. at 778.  Comerica argues that Vining cannot establish any of the elements of a

spoliation claim.

### a.  Control of evidence and obligation not to destroy or lose it

Comerica does not deny that it had control over all of its documents regarding MTG.  But

Comerica states that this adversary proceeding was filed "*eight years*" after the bankruptcy case

was filed, and after Comerica's claim had been allowed, and . . . Comerica had obtained a

release of claims from the estate."[65]  Under such circumstances, Comerica argues that "many

lawyers (and most laypersons) would have believed the statute of limitations [on any potential

lender liability claims against it] had long passed."[66]

### b.  Culpable state of mind

---

[64]  *Id.* at 55.

[65]  *Id*. at 56 (italics in original).

[66]  *Id.*

Comerica argues that in order to impose an adverse inference against it based on the destruction of evidence, the Court would have to find that it acted intentionally or in bad faith.[67] Comerica argues that "[t]here is no evidence of bad faith in this case: or any evidence that Comerica "intentionally 'concealed' any documents."

### c. Relevance

Comerica argues that the allegedly missing documents "either never existed or are not relevant to the claims at issue in this case."[68]

### d. Lack of any prejudice

Comerica argues that Vining, by his own admission, has not suffered any prejudice. Comerica relies on the testimony of Vining "that he had sufficient records to establish his case."[69] Comerica noted that Vining had conducted all of his depositions before he served his second discovery requests and that this belies his claim that he needed additional documents to question witnesses at the depositions.

## IV. Discussion

### A. There are no missing documents that are material to Vining's claims or Comerica's defenses.

Partly for reasons discussed in the Court's Opinion Regarding Summary Judgment Motions, filed today, the Court agrees with Comerica's positions described in Parts III.C.1 and

---

[67] *Id.* at 56-58.

[68] *Id.* at 58.

[69] *Id.* at 59.

III.C.3 of this Opinion, above.  And for the reasons discussed in Part IV.F of this Opinion, below, the Court rejects Vining's spoliation claim.

Vining has leveled very serious charges against Comerica and its counsel, including lying to the Court, participating in conspiracies, intentionally destroying, concealing, and fabricating evidence, and engaging "in a 16 year pattern of fraud, deception, and unlawful conduct intended to prevent the prosecution of claims against Comerica[.]"[70]  Vining has failed to prove these accusations with any persuasive evidence.  And to support these accusations, Vining, in part, has relied on "facts" that have turned out not to be true.  For example, Vining alleged, in objecting to Comerica's motion to dismiss based on the statute of frauds, that he "was suing the Bank for breaching *written* loan agreements signed by both the Bank and the Debtor" and "documents signed by the Bank evidencing [loans to the Becker Group]."[71]  Based on these representations by Vining, and construing the complaint in the light most favorable to Vining, the non-moving party, the Court viewed the complaint as alleging that Vining's lender liability claims were based on written loan agreements signed by an authorized representative of Comerica.  Based on these representations, the Court denied the motion to dismiss, thereby allowed Vining to conduct discovery regarding his lender liability claims.  But after lengthy and costly discovery, Vining presented no evidence that there were any loans from Comerica to the Becker Group (the alleged

---

[70]  Tr. of hearing on Contempt Mot. (Docket # 541) at 4.

[71]  *See* Docket # 66 ("Trustee's Objections to Comerica Bank's Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) and Fed.R.Bankr.P. 7012(b)," filed on May 31, 2007) at 8-9 (emphasis added); *see also* Tr. of H'rg on Summ. J. Mots. (Docket # 694) at 80 ("What I told the Court, and I quote, . . . the statute of frauds is inapplicable because 'the [T]rustee is suing the [B]ank for breaching written loan agreements signed by both the [B]ank and the [D]ebtor.'"); discussion in Part V.B.3.c of the Court's Op. Regarding Summ. J. Mots., filed today).

Becker Loans), or that there was any written agreement between Comerica and MTG modifying the terms of the demand promissory notes, or the terms of the line of credit agreements, as Vining has repeatedly alleged. Rather, all the evidence is to the contrary.[72]

As explained in much more detail in the Court's Opinion Regarding Summary Judgment Motions, filed today, the evidence shows that there were no Becker Loans, and that there was no signed written agreement that could overcome Comerica's statute of frauds defense. This alone defeats Vining's Contempt Motion. This is so because most of Vining's accusations of missing, concealed, destroyed, and fabricated documents relate to, and depend upon the existence of, Becker Loans and a signed written agreement between Comerica and MTG modifying the terms of the line of credit and demand promissory note agreements. But Comerica could not destroy or conceal documents that never existed. And Vining has failed to prove that any such documents ever existed.

With regard to any other documents that Vining alleges are missing, the Court finds and concludes that none of those documents are **material** to any of Vining's claims against Comerica or to Comerica's statute of frauds defense to those claims. Therefore, Vining has not been prejudiced by Comerica's failure to produce such documents. This is so because "[t]he Michigan

---

[72] *See* discussion in Part V.B.3.a of the Court's Op. Regarding Summ. J. Mots. (bold in original) ("**All of the evidence in the record demonstrates that the over-formula loan advances Comerica made between June 21, 1995 and July 21, 1995 were loan advances to MTG, not to the Becker Group**."); discussion in Part V.B.3.c of the Court's Op. Regarding Summ. J. Mots. (italics in original) ("Now, at the summary judgment stage, Vining has failed to produce any such written agreements, or to present any evidence that any such written agreements ever existed. Instead, Vining now argues that, contrary to the no-oral modification-or-waiver language in the promissory notes, during the Renaissance Club meeting, Marcinelli *orally* promised to waive the reporting and formula requirements in the Loan Documents, pending the closing of the Asset Purchase Agreement.").

statute of frauds bars all actions against Comerica or its agents based on an oral promise or commitment."[73]

As stated in the Court's Opinion Regarding Summary Judgment Motions:

> In 1994, Michigan's statute of frauds provided the following with respect to an action against "a financial institution:"
>
> > (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
> >
> > (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
> >
> > (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
> >
> > (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.
> >
> > (3) As used in subsection (2), "financial institution" means a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act, Act No. 173 of the Public Acts of 1987, being sections 445.1651 to 445.1683 of the Michigan Compiled Laws, or Act No. 125 of the Public Acts of 1981, being sections 493.51 to 493.81 of the Michigan Compiled Laws, or an affiliate or subsidiary thereof.

---

[73] *See* discussion in Part V.B.3.c of the Court's Op. Regarding Summ. J. Mots.

Mich. Comp. Laws Ann. § 566.132(2)-(3) (West).

There is no dispute that Comerica is a "financial institution" within the meaning of the statute, and, therefore, that Comerica cannot be sued based on a financial accommodation it purportedly made unless such financial accommodation is in a writing signed by an authorized representative of Comerica. **And there is no genuine dispute that there are no signed written agreements that modified the demand nature of the applicable promissory notes or any of the terms of the Loan Documents, or that assigned liability for the over-formula loans to the Becker Group.**

Vining argues that documents existed which modified the terms of the Loan Documents, and/or that memorialized loans to the Becker Group, but that such documents were destroyed or concealed by the Comerica Defendants. But there is no evidentiary support in the record for Vining's argument that written documents ever existed that were relevant to, or memorialized, Comerica's alleged oral agreements with either MTG or the Becker Group. . . . .

There is no genuine dispute that for his lender liability claims, Vining is relying on promises or commitments that are not a part of the Loan Documents, but rather only alleged oral representations of employees of Comerica, including the statements that Comerica would be MTG's partner; that MTG could take over-formula advances; and that MTG did not have to submit A/R Reports. Indeed, Vining stated in his deposition testimony that the problems between Comerica and MTG were based on Comerica's "failing to honor its commitment to work with [MTG] **outside the terms of the loan agreement**." . . . .
Because MTG is seeking to enforce an alleged oral promise by Comerica to waive provisions of the Loan Documents (a type of "financial accommodation" under the statute of frauds), the statute is clearly applicable and bars the action. This conclusion is strongly supported by a series of decisions by the Michigan Court of Appeals, and a decision by at least one decision by the United States Court of Appeals for the Sixth Circuit.[74]

---

[74] Op. Regarding Summ. J. Mots. at Part V.B.3.c (first bold added, second bold in original) (footnotes omitted) (relying on *Crown Tech. Park v. D&N Bank, FSB*, 619 N.W.2d 66 (Mich. Ct. App.

The holding in *Huntington Nat'l Bank v. Daniel J. Aronoff Living Tr.*, 853 N.W.2d 481 (Mich. Ct. App. 2014), one of the decisions described in the Court's Opinion Regarding Summary Judgment Motions, is that in order for a promise of the type described in the Michigan statute of frauds to be enforceable against a financial institution, the borrower must show that the promise was (1) in writing; (2) signed by an authorized representative of the financial institution; *and* (3) *received by the borrower*. *Aronoff*, 853 N.W.2d at 485-87. The *Aronoff* court disagreed with the borrower's contention that "the statute of frauds could be satisfied through 'internal documents [of the financial institution] which were never shared with [them].'" *Id*. at 486-87. The Michigan Court of Appeals agreed with the trial court's reasoning that "'[b]ecause a promise is a manifestation of an intent by the promisor that justifies reliance by the promisee, . . [Mich. Comp. Laws §] 566.132(2) requires proof that . . . the party seeking to enforce the promise or commitment actually received the writing signed by an authorized person.'" *Id.*

Therefore, under *Aronoff*, Vining cannot satisfy the statute of frauds by the use of any internal documents of Comerica. Rather, Vining must produce a written document memorializing any promise by Comerica that he seeks to enforce, which is signed by an authorized representative of Comerica, **and** such writing must be produced from the records of MTG. (Vining has presented no evidence that any such document ever existed.)

It follows that there are no missing internal records of Comerica that are material to Vining's claims. Nor are there any other documents that are material to Vining's claims against

---

2000) and *Huntington Nat'l Bank v. Daniel J. Aronoff Living Tr.*, 853 N.W.2d 481 (Mich. Ct. App. 2014)).

Comerica.  It is not enough for Vining to just say otherwise — he must prove it, and he has not done so.

**B. Even if the Court could find Comerica in civil contempt, the Court would exercise its discretion to decline to award any relief in favor of Vining based on contempt.**

In *In re City of Detroit, Michigan*, 614 B.R. 255, 264, 273 (Bankr. E.D. Mich. 2020), this Court discussed the civil contempt powers of bankruptcy courts:

> Bankruptcy courts have civil contempt powers. Those powers "flow from Bankruptcy Code § 105(a) and the inherent power of a court to enforce compliance with its lawful orders." *In re Walker*, 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001) (citations omitted).
> . . . .
>
> As this Court pointed out in its opinion in the *Schubiner* [*v. Zolman* (*In re Schubiner*), 590 B.R. 362, 398-99 (Bankr. E.D. Mich. 2018)] case, . . . if the Court finds a party in civil contempt, the Court has discretion to award compensatory monetary relief, but the Court also has discretion not to award such relief. The Court made this point in *Schubiner* when discussing the specific form of contempt consisting of a violation of the discharge injunction under 11 U.S.C. § 524(a)(2). But the point applies to civil contempt generally . . . .

In the *City of Detroit* case, this Court noted that, after the United Supreme Court's decision in *Taggart v. Lorenzen*, —— U.S. ——, 139 S. Ct. 1795 (2019), a party seeking an order holding another party liable for civil contempt must prove the following elements:

> To summarize, after *Taggart*, the elements that must be proven for a court to find a party in civil contempt are that (1) the party violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts; (2) the party did so with knowledge of the court's order; and (3) there is no fair ground of doubt as to whether the order barred the party's conduct — *i.e.*, no objectively reasonable basis for concluding that the party's conduct might be lawful. And at least as to the first two

of these elements, the moving party must prove them by clear and convincing evidence.

If these elements are proven, the accused party may still avoid a contempt finding, by proving that his/her compliance with the order in question was impossible.

*City of Detroit*, 614 B.R. at 265–66.

It is unnecessary for the Court to determine whether or to what extent the Court's orders were violated, because even if they were, the Court would decline to exercise its discretion to grant any relief for contempt under the facts and circumstances of this case. This is so because the Court agrees with Comerica that the allegedly "missing or concealed" documents were either produced, or they did not exist, or if they did exist and were not produced, they were not material to any of Vining's claims against Comerica or Comerica's statute of frauds defense. Therefore, any discovery violations were harmless and caused no prejudice to Vining.

### C. The Court will not impose sanctions against Comerica based on Fed. R. Civ. P. 26(g)(3).

Fed. R. Civ. P. 26 applies to adversary proceedings under Fed. R. Bankr. P. 7026. If the Court finds that Comerica violated Fed. R. Civ. P. 26 without substantial justification, it must impose sanctions against Comerica. But "[t]he Advisory Committee's Notes indicate that the 'nature of sanctions is a matter of judicial discretion to be exercised in light of the particular circumstances.' FED.R.CIV.P. 26(g), Advisory Committee Notes to the 1983 Amendments." *St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 516 (N.D. Iowa 2000).

Fed. R. Civ. P. 26(g) states, in relevant part:

(1) *Signature Required; Effect of Signature*. Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the

attorney's own name--or by the party personally, if unrepresented--and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

> (A) with respect to a disclosure, it is complete and correct as of the time it is made; and

> (B) with respect to a discovery request, response, or objection, it is:

>> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

>> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

>> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

. . . .

> (3) *Sanction for Improper Certification*. If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26 (italics in original).  "The standard for imposing Rule 26(g) sanctions is objective."  *St. Paul Reinsurance Co.*, 198 F.R.D. at 516 (footnote omitted).

The objective standard requires that the attorney signing the discovery documents under Rule 26(g)(2) make only a reasonable inquiry into the facts of the case. Counsel need not conduct an exhaustive investigation, but only one that is reasonable under the circumstances. Relevant circumstances may include: (1) the number and complexity of the issues; (2) the location, nature, number and availability of potentially relevant witnesses or documents; (3) the extent of past working relationships between the attorney and the client, particularly in related or similar litigation; and (4) the time available to conduct an investigation.

The court tests the signer's certification under an objective standard of reasonableness, except that it may inquire into the signer's actual knowledge and motivation to determine whether a discovery request, response or objection was interposed for an improper purpose. While there is no requirement that the court find bad faith to find improper purpose, outward behavior that manifests improper purpose may be considered in determining objective improper purpose deserving sanction. The certification by the signer is tested as of the time the discovery paper is signed. The court must strive to avoid the wisdom of hindsight in determining whether the certification was valid at the time of the signature, and all doubts are to be resolved in favor of the signer. However, each signing of a new discovery request, response, or objection must be evaluated in light of the totality of the circumstances known at the time of signing. Therefore, the practical import of Rule 26(g) is to require vigilance by counsel throughout the course of the proceeding.

*St. Paul Reinsurance Co.*, 198 F.R.D. at 516 & n.3 (footnotes omitted) (citations omitted).

The Court finds that Vining is not entitled to any sanctions under Fed. R. Civ. P. 26(g), because Vining has failed to show that Comerica's counsel violated this rule. And even if Vining had shown any such violation, it would be harmless.

### D. The Court will not impose any sanctions against Comerica Under Fed. R. Civ. P. 37.

Fed. R. Civ. P. 37 applies to adversary proceedings under Fed. R. Bankr. P. 7037. This rule applies to various forms of discovery abuse. It provides for the imposition by the Court of

30

sanctions if the Court finds that certain criteria have been met. Vining apparently seeks sanctions against Comerica and its counsel based on Fed. R. Civ. P. 37(c)(1) and Fed. R. Civ. P. 37(b)(2).

Fed. R. Civ. P. 37 provides, in relevant part:

> **(b) Failure to Comply with a Court Order.**
> . . . .
>
> **(2) *Sanctions Sought in the District Where the Action Is Pending*.**
>
> > (A) *For Not Obeying a Discovery Order*. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> >
> > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> >
> > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> >
> > (iii) striking pleadings in whole or in part;
> >
> > (iv) staying further proceedings until the order is obeyed;
> >
> > (v) dismissing the action or proceeding in whole or in part;
> >
> > (vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

. . . .

> *(C) Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

**(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit**.

*(1) Failure to Disclose or Supplement*. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

. . . .

**(e) Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

32

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37 (bold and italics in original).

### 1. The sanction of a default judgment under Fed. R. Civ. P. 37 and/or other authority

One of the possible sanctions the Court may impose against Comerica if it finds that Comerica violated Fed. R. Civ. P. 37 is the entry of a default judgment against it.  (*See* Fed. R. Civ. P. 37(b)(2)(A)(vi), 37(c)(1)(C), 37(e)(2)(C).)  Vining sought a default judgment as his primary form of relief against Comerica and the other Defendants, in his later motion entitled "Trustee's Motion for Default Judgment, or in the Alternative, for Summary Judgment Against Defendants" (Docket # 583).  He sought this relief based on Comerica's alleged discovery fraud and spoliation of evidence, and on the alleged destruction of records of the Debtor by Taunt's attorney Ball.[75]  Vining seeks a default judgment based on Rule 37, and case law regarding spoliation of evidence and the Court's inherent power.

Vining's request for a default judgment is more appropriately decided in the context of the Contempt Motion, because it is a request for relief based on alleged violations of the discovery rules and spoliation of evidence.  The Court concludes under the facts and

---

[75] *See* Trustee's Substitute Br. in Supp. of Pl.'s Summ. J. Mot. (Docket # 657) at 8-15.

33

circumstances of this case, it would be an abuse of discretion to impose a default judgment against any of the Defendants — *i.e.*, the most severe sanction under the rules.

A default judgment against Comerica or any other Defendant is not appropriate. First, Vining has not shown wilfulness, bad faith, or fault on the part of Comerica, Taunt, or their counsel. Second, Vining has not suffered any prejudice. Third, there are less drastic sanctions that the Court could impose, if any sanctions were appropriate. And fourth, the Court now has filed a lengthy opinion rejecting almost all of Vining's claims on the merits, having determined that the claims have no merit. *See generally Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008) (holding that in deciding whether to exercise its discretion to impose the most severe sanction in its arsenal (a default judgment) for discovery abuses, the court should consider four factors: "1) whether the disobedient party acted in willful bad faith; 2) whether the opposing party suffered prejudice; 3) whether the court warned the disobedient party that failure to cooperate could result in a default judgment; and 4) whether less drastic sanctions were imposed or considered").

### 2. Sanctions under Fed. R. Civ. P. 37(b)(2)(A) "For Not Obeying [a] Discovery Order"

Sanctions under Fed. R. Civ. P. 37(b)(2)(A) for not obeying a discovery order are discretionary. Vining has failed to show that Comerica or its counsel have disobeyed any discovery order of this Court. But even if the Court had found a violation of any discovery order, the Court would decline to exercise its discretion to sanction Comerica or its counsel under the facts and circumstances of this case, discussed above, including the fact that Vining has failed to

34

show that there are any documents not produced in discovery that are material to Vining's claims or Comerica's statute of frauds defense.

### 3. Sanctions under Fed. R. Civ. P. 37(b)(2)(C) "Payment of Expenses"

Under Fed. R. Civ. P. 37(b)(2)(C), the court must order a party who has disobeyed a discovery order to pay the opposing party's reasonable attorney fees and expenses, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Here, the Court has found that neither Comerica or its counsel have violated any discovery order of the Court. But even if the Court found that Comerica violated any discovery order(s), an award of expenses to Vining would be unjust.

### 4. Sanctions under Fed. R. Civ. P. 37(b)(2)(c)(1) "Failure to Disclose or Supplement"

Under Fed. R. Civ. P. 37(b)(2)(c)(1), the Court has discretion to sanction a party for failure to provide information "required under by Rule 26(a) or (e), . . . unless the failure was substantially justified or is harmless." Because the Court has found that the information that Comerica allegedly failed to provide is not material to any of Vining's claims or Comerica's statute of frauds defense, any failure by Comerica is harmless and no sanctions are appropriate.

### 5. Sanctions under Fed. R. Civ. P. 37(e) "Failure to Disclose or Supplement"

Relief under Fed. R. Civ. P. 37(e)(1) is discretionary. Fed. R. Civ. P. 37(e)(1) requires a finding of "prejudice to [Vining] from the loss of the information." As the Court has found, Vining suffered no such prejudice. So no relief is justified under Fed. R. Civ. P. 37(e)(1).

### E. Sanctions under 28 U.S.C. § 1927: "Counsel's liability for excessive costs"

Section 1927 of Title 28 of the United States Code states:

> Any attorney or other person admitted to conduct cases in any court
> of the United States or any Territory thereof who so multiplies the
> proceedings in any case **unreasonably and vexatiously** may be
> required by the court to satisfy personally the excess costs,
> expenses, and attorneys' fees reasonably incurred because of such
> conduct.

28 U.S.C. § 1927 (emphasis added). The Court finds and concludes that Comerica's counsel has

not "unreasonably and vexatiously" multiplied the proceedings in this adversary proceeding. To

the contrary, Comerica's counsel has acted reasonably, and has not acted in bad, so no sanctions

can be awarded in favor of Vining under § 1927. *See generally In re Gorges*, 590 B.R. 771, 788-

90 (Bankr. E.D. Mich. 2018). Vining has repeatedly leveled very serious accusations against

Comerica and its counsel, but without any real evidence to support those allegations.

**F. Vining has not satisfied the legal standard to show spoliation of evidence**.

**1. The law regarding a spoliation of evidence**

In *Global Technovations, Inc. v. Onkyo U.S.A. Corp.* (*In re Global Technovations, Inc.*),

431 B.R. 739, 778-82 (Bankr. E.D. Mich. 2010), *aff'd*, No. 10-12781, 2011 WL 1297356 (E.D.

Mich. Mar. 31, 2011), *aff'd sub nom. Onkyo Europe Elec. GMBH v. Global Technovations, Inc.*

(*In re Glob. Technovations Inc.*), 694 F.3d 705 (6th Cir. 2012) (citations omitted), this Court

discussed at length the law governing spoliation of evidence. The Court reiterates that entire

discussion, and incorporates it by reference. That discussion includes the following:

> "'Spoliation is the destruction or significant alteration of
> evidence, or the failure to preserve property for another's use as
> evidence in pending or reasonably foreseeable litigation.'" In cases
> filed in federal court, federal law governs the rules that apply to,
> and the range of sanctions a federal court may impose for, the
> spoliation of evidence.

A party seeking sanctions for the spoliation of evidence has the burden of proving

> that the spoliating party (1) had control over the evidence and an obligation to preserve it at the time of destruction or loss; (2) acted with a culpable state of mind [in] destroying or losing the evidence; and that (3) the missing evidence is relevant to the innocent party's claim or defense.

> *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F.Supp.2d 456, 467 (S.D.N.Y.2010)(citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir.2002)).

431 B.R. at 798.

### 2. Application of the elements of spoliation to this proceeding

### a. Comerica preserved all evidence *material* to Vining's claims and Comerica's statute of frauds defense.

Comerica had an obligation to preserve evidence regarding its relationship with MTG as it was on notice, before MTG filed its Chapter 11 petition, that MTG might pursue lender liability claims against Comerica. The Court concludes that under all the circumstances, Comerica did make a reasonable effort to preserve, and did preserve, all of the evidence that was *material* to Vining's claims and Comerica's statute of frauds defense.

### b. None of the allegedly missing evidence is relevant to Vining's claims.

The Court has concluded that none of the evidence that Vining alleged was concealed or destroyed, by Comerica, Taunt, or their attorneys, was material to Vining's claims.[76]  Therefore, none of the purportedly missing evidence is relevant to Vining's claims, and this element of

---

[76] *See* Part IV.A of this Opinion (bold in original) ("**There are no missing documents that are material to Vining's claims or Comerica's defenses**.")

Vining's spoliation claim is not satisfied. Nor is there otherwise a valid basis to grant Vining any relief against any Defendant under the Court's inherent power.

## V. Conclusion and Order

For the reasons stated above,

IT IS ORDERED that the Contempt Motion (Docket # 505) is denied, in its entirety.

**Signed on October 7, 2022**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker**
**United States Bankruptcy Judge**